J-S64020-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRODERICK WAYNE HARRIS | : | |
| | : | |
| Appellant | : | No. 461 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 11, 2015
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001639-2014

BEFORE:   BOWES, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                        FILED APRIL 07, 2020

Broderick Wayne Harris appeals nunc pro tunc from his judgment of sentence, entered in the Court of Common Pleas of Fayette County, after being found guilty of 44 criminal counts, including robbery, unlawful restraint of a minor, criminal conspiracy, false imprisonment of a child, aggravated assault, unlawful restraint, false imprisonment, burglary, criminal trespass, theft by unlawful taking, terroristic threats, unauthorized use of a motor vehicle, kidnapping and facilitating a felony.  Harris was sentenced to serve an aggregate sentence of 25-50 years' imprisonment.  After careful review, we dismiss the appeal.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The facts surrounding Harris' arrest are set forth in detail in the trial court's post-sentence motion opinion. See Trial Court Opinion in Support of Jury Verdict, 10/2/15, at 3-14. In short, Harris and his compatriots broke into a residence,[1] pointed guns in their six victims' faces, repeatedly struck the victims in the face and head with their guns, and terrorized them by threatening to kill the victims if they did not comply with their demands and turn over money. Two of Harris' cohorts drove one of the victims, Jonathan Byers, at gunpoint to an ATM, where they unsuccessfully attempted to make him withdraw money. Byers was driven back to the residence, where his hands were tied and the defendants continued to physically assault him and threaten him.

After a three-day trial held in March 2015, the jury returned a guilty verdict on the above-stated 44 offenses.[2] On June 11, 2015, the trial court sentenced Harris to consecutive terms of imprisonment as follows: 7½ to 15 years' imprisonment ((Count 16) robbery); 7½ to 15 years' imprisonment ((Count 17) robbery); 7½ to 15 years' imprisonment ((Count 18) robbery); and 2½ to 5 years' imprisonment ((Count 11) unlawful restraint of minor victim). Harris was also sentenced to serve a term of 7½ to 15 years'

_____

[1] A four-year-old child was present in a bedroom in the home at the time of the attack.

[2] The jury found Harris guilty of Counts 1-2 and 8-48 and found him not guilty of Counts 4-7.

imprisonment ((Count 15) false imprisonment of child) to run concurrently with the prior sentences at Counts 16, 17, 18 and 11.[3] Harris filed a timely post-sentence motion on June 18, 2015, claiming that the verdict was against the weight of the evidence due to the unreliable identification testimony of witnesses that "should not have been found to overcome the presumption of innocence and establish proof of [Harris'] guilt beyond a reasonable doubt." Post-Sentence Motion, 6/18/15, at ¶¶ 3-4. The trial court denied Harris' post-sentence motion and, on July 29, 2015, he filed a timely notice of appeal and, on August 21, 2015, a Pa.R.A.P. 1925(b) court-ordered concise statement of errors complained of on appeal. Harris' appeal was dismissed due to counsel's failure to file a docketing statement. See Pa.R.A.P. 3517.

On August 20, 2015, Harris filed a pro se PCRA petition. On October 1, 2015, Harris' PCRA petition was dismissed without prejudice to refile after the appeal was completed.[4] On May 15, 2017, Harris filed a second PCRA petition. On May 24, 2017, the court appointed James V. Natale, Esquire, to represent Harris, and ordered Attorney Natale to file an amended brief. On July 14, 2017, counsel sought to withdraw due to a conflict of interest from having represented one of Harris' co-defendants at trial. The court granted counsel's

_____

[3] No further penalty was imposed at Counts 1-3, 8-15, 19-48.

[4] There is an unexplained gap in the record between the date that our Court dismissed the appeal and the date that the trial court issued its Rule 1925(a) opinion. The trial court docket indicates that our Court's order dismissing Harris' appeal was filed on October 27, 2015. However, our docket indicates that the order was entered on September 18, 2015.

withdrawal request and new counsel, Michael Ford, Esquire, was appointed as PCRA counsel. Attorney Ford filed an amended PCRA petition on February 7, 2019. After a hearing, the trial court granted Harris' PCRA petition finding that Harris "was denied effective assistance of counsel for counsel's failure to file a docket entry pending appeal . . . causing the appeal to be denied[;]" the court reinstated his appeal rights. See Order, 3/11/19. On March 28, 2019, Harris filed a timely notice of appeal and Rule 1925(b) court-ordered concise statement of errors complained of on appeal.

Harris presents the following issues for our consideration:

(1)     Was Jonathan Byers['] identification of [Harris] at trial unreliable[?]

(2)     Did the Commonwealth present evidence not provided to [Harris] through discovery when it introduced the testimony of Jonathan Byers['] identification of [Harris?]

(3)     Did the trial court err in denying [Harris'] motion for mistrial when the Commonwealth presented evidence not provided to [Harris] through discovery, specifically, the testimony of Jonathan Byers['] identification of [Harris?]

(4)     Was the verdict against the weight of the evidence because the Commonwealth failed to prove that [Harris] was one of the actors who committed the alleged crimes[?]

(5)     Did the trial court err in denying [Harris'] post[-]sentence motion for a new trial as the jury verdict was against the weight of the evidence[?]

(6)     Did the evidence presented at trial fail to sufficiently establish beyond a reasonable doubt that [Harris] was one of the actors who committed the alleged crimes[?]

Appellant's Brief, at 7.

In essence, Harris' issues boil down to one central contention – the Commonwealth failed to prove each offense because it did not prove "through scientific evidence or eyewitness testimony [that he] committed the crimes for which [he wa]s charged."[5]  Appellant's Brief, at 9.

Harris takes issue with the identification evidence provided by victim Jonathan Byers.  We first note that "[a]ny uncertainty in an eyewitness's identification of a defendant is a question of the weight of the evidence,[6] not its sufficiency."  Commonwealth v. Cain, 906 A.2d 1242, 1245 (Pa. Super. 2006).  In Commonwealth v. Grahame, 482 A.2d 255 (Pa. Super. 1984), our Court noted:

_____

[5] Other than in his statement of questions presented, Harris makes no other mention throughout his appellate brief of his motion for a mistrial or of a discovery violation.  Thus, we find issues two and three waived.

[6] We also recognize that weight of the evidence issues must be raised before the trial judge "in a motion for a new trial[,] . . . orally[,] . . . by written motion[,] . . . or in a post-sentence motion."  See Pa.R.Crim.P. 607(A).  Failure to raise the issue below will result in waiver on appeal.  Commonwealth v. Burkett, 830 A.2d 1034, 1037 (Pa. Super. 2003).  Here, Harris filed a timely post-sentence motion after he was sentenced.  In that motion he raised the current weight issue based on his perceived lack of identification evidence.  Despite the denial of that motion, the trial court ultimately granted Harris the right to file an appeal nunc pro tunc due to counsel's ineffectiveness resulting in the dismissal of his appeal.  We note that the term "nunc pro tunc" means "now for then."  Commonwealth v. Wright, 846 A.2d 730, 735 (Pa. Super. 2004) (citing Black's Law Dictionary, at 1069 (Sixth Ed. 1990).  It is "a phrase applied to acts allowed to be done after the time when they should be done, with a retroactive effect, i.e., with the same effect as if regularly done."  Id.  Thus, we find that the current nunc pro tunc appeal puts Harris back in time following the denial of his timely filed post-trial motions.  Thus, he has properly preserved the issue on appeal.

> Proof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction. Commonwealth v. Reid, [] 187 A 263 ([Pa. Super.] 1936). The evidence of identification, however, needn't be positive and certain in order to convict, although any indefiniteness and uncertainty in the identification testimony goes to its weight. Commonwealth v. Mason, [] 236 A.2d 548 ([Pa. Super.] 1967).

Id. at 232 (citations omitted) (emphasis in original).

The only case law cited in the argument section of Harris' brief pertains to the legal standard for sufficiency of the evidence claims, noting that the Commonwealth must "prove each and every element of a charge beyond reasonable doubt." Appellant's Brief, at 10, 16, citing Commonwealth v. Harper, 403 A.2d 536 (Pa. 1979) and Commonwealth v. Richardson, 357 A.3d 671 (Pa. Super. 1976). A sufficiency of the evidence review, however, does not include an assessment of the credibility of the testimony at trial. As noted supra, such a claim is more properly characterized as a weight of the evidence challenge. See Commonwealth v. Wilson, 825 A.2d 710, 713-14 (Pa. Super. 2003).

While Harris' argument improperly characterize the claim on appeal as one of sufficiency of the evidence, the remainder of his appellate brief is a discourse of suppositions regarding the accuracy of Byers' identification and the degradation of memory that is "exacerbated by the passage of time." Appellant's Brief, at 12. Harris also briefly references Pa.R.E. 603, the competency of witnesses, and discusses the testimony from the other victims and their inability to identify Harris as one of their attackers. Id. at 13. Finally, Harris concludes his argument by waxing poetically about the inherent

unreliability of eyewitness testimony and when, if ever, it should be suppressed from trial. Id at 14.

Not only is Harris' argument nonsensical, it is also unsupported by citation to the record and does not consist of any developed issues capable of appellate review. See In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (citation omitted); see also Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed— the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.") (emphasis added).

Finally, Harris has also failed to append a copy of the trial court's opinion and his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal to his appellate brief (although he lists the trial court's opinion as "App. A" in the index of his brief). See Pa.R.A.P. 2111(b), (d). Due to the significant deficiencies in Harris' brief, we dismiss the appeal. See Karn v. Quick & Reilly, Inc., 912 A.2d 329 (Pa. Super. 2006) (appeal may be dismissed or quashed where deficiencies in appellant's brief are such that Court unable to conduct meaningful review).

Appeal dismissed.[7]

_____

[7] We, note, however, that even if we were to address the weight of the evidence claim regarding Byers' identification testimony, Harris would not be entitled to relief. Here, at trial, victim Jonathan Byers described the height, clothing, gender, and race of his attacker. N.T. Jury Trial, 3/3/15, at 142-43.

Judge Pellegrini joins this Memorandum.

Judge Bowes files a Dissenting Statement.

_____

Byers was also able to confirm that he viewed his assailant's facial features and heard the man's voice. Id. at 143. See Commonwealth v. Fromal, 572 A.2d 711, 716 (Pa. Super 1990) (witness may testify to person's identity from voice alone). And, for the first time, Byers identified Harris by name. N.T. Jury Trial, 3/3/15, at 143. Byers also positively identified Harris in the courtroom as the individual "seated to the far right [wearing] a shirt and a vest and a tie[.]" N.T. Jury Trial, 3/3/15, at 173. Defense counsel rigorously cross-examined Byers, pointing out inconsistencies in the victim's testimony at two prior court hearings where he could only identify co-defendant Keith Johnson, not Harris, by name. Byers admitted on cross-examination that at the time of the incident he was not able to identify Harris. Id. at 183. However, he testified that "there was [sic] a lot of anxiety and things going on so [he] could only see certain images flashing through [his] head, but over the last year [he's] been able to think about what happened and remember that night and [he] can clearly remember being able to look up and see what people looked like." Id. at 183.

Here, the jury, sitting as the fact finder, was free to believe all, part, or none of the evidence against Harris. The jury listened to the testimony, weighed the evidence, and concluded that Harris perpetrated the crimes in question. We agree that this determination is not so contrary to the evidence as to shock one's sense of justice and will not reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant relief on Harris' weight challenge. Cf. Grahame, supra (Commonwealth failed to present sufficient identification evidence to submit charges against defendant to jury where sole identification witness, who had failed to identify defendant in line-up, testified at preliminary hearing that all African Americans looked alike and, although witness identified defendant on direct examination, on cross-examination she testified that she did not get good look at defendant during crime and was not sure she had ever seen defendant before other than at preliminary hearing).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/7/2020